02D02-2401-CT-000085

Allen Superior Court 2

Filed: 1/31/2024 4:24 PM
Clerk
Allen County, Indiana
JS

| STATE OF INDIANA | ) | IN THE ALLEN SUPERIOR COURT |
| --- | --- | --- |
| | )SS: | |
| COUNTY OF ALLEN | ) | CAUSE NO. |

ADAM & SHANNON MORRELL,  )
ANDREW & AMY GLANCY,  )
TYLER BLUME,  )
MELISSA SHIRTS,  )
SALINE RICHARD,  )
GRACE VAN,  )
SKOV HOLDINGS, LLC,  )
ARGO VENDING, LLC,  )
EPIC LEAF CORP.,  )
GAVIN & JENNIFER REES,  )
                                              )
    Plaintiffs,  )
v.  )
                                              )
JSG DISTRIBUTION, LLC,  )
NICHOLAS JONES,  )
JOSHUA HYLTON,  )
                                              )
    Defendants.  )

## COMPLAINT TO COMPEL ARBITRATION AND/OR FOR DAMAGES

COME NOW Plaintiffs, by counsel, Barrett McNagny LLP, and for their Complaint to Compel Arbitration and/for Damages against the Defendants, and state as follows:

1. Passive CBD Vending, LLC ("Passive CBD") is a North Carolina limited liability company.

2. JSG Distribution, LLC ("JSG Distribution") is a North Carolina limited liability company.

3. Nicholas Jones ("Jones"), upon information and belief, is a citizen of the State of North Carolina.

4. Joshua Hylton ("Hylton"), upon information and belief, is a citizen of the State of North Carolina

3861422

5. Plaintiffs Andrew and Amy Glancy are citizens of the State of Indiana.

6. At all times, Andrew and Amy Glancy communicated with Passive CBD Vending and JSG Distribution and its agents and representatives while located in Indiana for the purpose of Passive CBD and JSG Distribution conducting business in Indiana, more specifically, placing vending machines within the State of Indiana and generating income from the State of Indiana.

### PASSIVE CBD VENDING AND JSG DISTRIBUTION

7. Cannabidiol ("CBD") is a chemical found in the drug cannabis. CBD generally does not contain the psychoactive ingredient known as tetrahydrocannabinol (THC).

8. CBD is sold as an extract which manufacturers add to various products, such as creams and lotions. CBD is used as a treatment for a range of conditions such as pain, inflammation, anxiety, and insomnia.

9. Passive CBD Vending purports to develop and sell vending machines which dispense various products containing CBD, including tinctures, soft gels, gummies, body lotion, and muscle gels.

10. Passive CBD Vending has three members: Michael Gulbronson, Nicholas Jones, and Dave Linderholm.

11. Passive CBD Vending advertised its vending machines as an opportunity for its customers to earn passive income and capitalize on the burgeoning CBD market which it advertises on its website will grow from $1 billion in 2019 to $20 billion by 2024.

12. Passive CBD Vending purported to sell its vending machines to customers who are responsible for operating the vending machines. Passive CBD Vending was

supposed to identify a location for the machine and the customer is entitled to the profits generated by the machine's sales.

13. The customer enters into a separate licensing agreement with a related entity named JSG Distribution for the right to purchase and stock the machine with JSG Distribution products. The members of JSG Distribution also include Michael Gulbronson, Nicholas Jones, Dave Linderholm.

14. The Plaintiffs have all executed agreements with Passive CBD and JSG Distribution.

15. Passive CBD and JSG Distribution, through its agents, including Joshua Hylton and Nicholas Jones, made representations to the Plaintiffs and/or were aware of representations made to the Plaintiffs to induce them to purchase the vending machines and products.

16. The Plaintiffs were told that the Passive CBD and JSG Distribution would procure a high traffic and lucrative location for the vending machines.

17. On information and belief, Defendants never had any locations for the Plaintiffs' vending machines.

18. Passive CBD and JSG Distribution provided the Plaintiffs with brochures and promotional materials as an inducement to enter into a contract that provided, among other things, that the vending machine would be received within 75-90 days following purchase.

19. Passive CBD and JSG Distribution showed Plaintiffs a slideshow that stated "guaranteed vending machine placement in high traffic area."

3861422

20. Passive CBD and JSG Distribution provided the Plaintiffs with revenue projections and forecasts that were not based upon reality and, upon information and belief, had never been achieved by any Passive CBD or JSG Distribution client.

21. Passive CBD and JSG Distribution and its agents represented to the Plaintiffs that the machines were built in the United States when in actuality the machines were built in China.

22. Passive CBD and JSG Distribution agents were instructed to not inform customers that the machines were built in China and to tell the customers that the machines were built in the United States.

23. The Defendants, including Hylton and Jones, failed to disclose certain, material risks to the Plaintiffs including, but not limited to, that the financial results promised had never been achieved or that the Defendants did not have guaranteed locations for the vending machines.

24. The Defendants, including Hylton and Jones, failed to disclose the financial distress of Passive CBD and JSG Distribution to the Plaintiffs and continued to sell and market the machines and product a mere weeks before they announced the close of their business.

## THE AGREEMENTS

25. The Sales Contract Agreement and the Licensing Agreement, which were largely identical for each of the Plaintiffs, made certain statements which the Defendants knew or should have known that the Defendants could not fulfill.

26. For example, the Sales Contract Agreement provided that the products would be shipped to the buyer within 90 days or less.

3861422

27. The Defendants entered into this contract at a time they knew or should have known that thew products would not be shipped in 90 days or less.

28. The Sales Contract Agreement provided that Passive CBD or JSG Distribution would be responsible for securing a high-traffic location for each vending machine unit purchased.

29. The Defendants entered into this contract at a time they knew or should have known that they were having difficulty placing the units in a high traffic location and failed to disclose that information to the Plaintiffs.

30. The Licensing Agreement provides that JSG Distribution would sell an assortment of products to stock in the vending machine units.

31. The Defendants entered into this contract at a time when they knew or should have known that customers were not receiving their vending machine units and/or that JSG Distribution had no product to provide.

32. Both agreements require that any dispute is to be resolved by arbitration.

### ANDREW AND AMY GLANCY

33. The Glancys entered into a Sales Contract Agreement with Passive CBD Vending on or about March 30, 2022. A true and accurate copy of the Sales Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

34. The Sales Agreement provides that the Glancys would purchase one vending machine unit for the sum of $30,000.00. $25,000 of the Purchase Price was to cover the cost of the vending machine and $5,000 was for the first order of product. $1,000 worth of product would additionally be included as part of a promotion.

35. The Glancys contemporaneously entered into a Licensing Agreement with JSG Distribution at the same time they entered into the Sales Agreement with Passive

CBD Vending. A true and accurate copy of the Licensing Agreement, dated March 30, 2022, is attached hereto as Exhibit "**B**" and incorporated herein by reference.

36. The Licensing Agreement provides that JSG Distribution will sell the Glancys product with which to stock the vending machine. The minimum value of each purchase is $5,000.00.

37. The Glancys never received a vending machine or any product and a little over a month later the company indicated that it was ceasing.

### ADAM AND SHANNON MORRELL

38. The Morrells entered into a Sales Contract Agreement with Passive CBD Vending on or about January 5, 2022. A true and accurate copy of the Sales Agreement is attached hereto as Exhibit "**C**" and incorporated herein by reference.

39. The Sales Agreement provides that the Morrells would purchase one vending machine unit for the sum of $25,000.00.

40. The Morrells contemporaneously entered into a Licensing Agreement with JSG Distribution at the same time they entered into the Sales Agreement with Passive CBD Vending. A true and accurate copy of the Licensing Agreement, dated January 5, 2022, is attached hereto as Exhibit "**D**" and incorporated herein by reference.

41. The Morrells did not receive the vending machine as promised.

42. The Morrells were promised "free product" by the Defendants to urge them to sign the agreement after they were very hesitant to do so.

### TYLER BLUME

43. Tyler Blume entered into a Sales Contract Agreement with Passive CBD Vending on or about August 16, 2021. A true and accurate copy of the Sales Agreement is attached hereto as Exhibit "**E**" and incorporated herein by reference.

3861422

44. The Sales Agreement provides that the Blume would purchase one vending machine unit for the sum of $23,000.00 - $18,000 of the Purchase Price was to cover the cost of the vending machine and $5,000 was for the first order of product.

45. Blume contemporaneously entered into a Licensing Agreement with JSG Distribution at the same time he entered into the Sales Agreement with Passive CBD Vending. A true and accurate copy of the Licensing Agreement, dated August 16, 2021, is attached hereto as Exhibit "F" and incorporated herein by reference.

46. Blume did not receive his vending machine as promised.

### MELISSA SHIRTS

47. Melissa Shirts entered into a Sales Contract Agreement with Passive CBD Vending on or about January 3, 2022. A true and accurate copy of the Sales Agreement is attached hereto as Exhibit "G" and incorporated herein by reference.

48. The Sales Agreement provides that Shirts would purchase one vending machine unit for the sum of $25,000.00.

49. Shirts contemporaneously entered into a Licensing Agreement with JSG Distribution at the same time they entered into the Sales Agreement with Passive CBD Vending. A true and accurate copy of the Licensing Agreement, dated January 34, 2022, is attached hereto as Exhibit "H" and incorporated herein by reference.

50. Shirts did not receive the vending machine as promised.

### GRACE VAN AND SALINE RICHARDS

51. Grace Van and Saline Richards entered into a Sales Contract Agreement with Passive CBD Vending on or about January 10, 2022. A true and accurate copy of the Sales Agreement is attached hereto as Exhibit "I" and incorporated herein by reference.

3861422

52. The Sales Agreement provides that Grace Van and Saline Richard would receive a vending machine package for $60,000 with a "Veterans Discount" of $5,000 applied.

53. Van and Richards contemporaneously entered into a Licensing Agreement with JSG Distribution at the same time they entered into the Sales Agreement with Passive CBD Vending. A true and accurate copy of the Licensing Agreement, dated January 10, 2022 is attached hereto as Exhibit "**J**" and incorporated herein by reference.

54. Van and Richard never received machines, product, or machine placement services.

### SKOV HOLDINGS, LLC

55. SKOV Holdings, LLC entered into a Sales Contract Agreement with Passive CBD Vending on or about June 16, 2020. A true and accurate copy of the Sales Agreement is attached hereto as Exhibit "**K**" and incorporated herein by reference.

56. The Sales Agreement provides that SKOV Holdings would receive three vending machines for $50,000.00.

57. SKOV Holdings contemporaneously entered into a Licensing Agreement with JSG Distribution at the same time they entered into the Sales Agreement with Passive CBD Vending. A true and accurate copy of the Licensing Agreement, dated June 16, 2020 is attached hereto as Exhibit "**L**" and incorporated herein by reference.

58. SKOV Holdings received the product but the product expired before the machines were delivered.

3861422

## ARGO VENDING, LLC

59. Argo Vending, LLC entered into a Sales Contract Agreement with Passive CBD Vending on or about June 16, 2021. A true and accurate copy of the Sales Agreement is attached hereto as Exhibit "M" and incorporated herein by reference.

60. The Sales Agreement provides that Argo Vending would receive six vending machines for $90,000.00.

61. Argo Vending contemporaneously entered into a Licensing Agreement with JSG Distribution at the same time they entered into the Sales Agreement with Passive CBD Vending. A true and accurate copy of the Licensing Agreement, dated September 23, 2021 is attached hereto as Exhibit "N" and incorporated herein by reference.

62. Argo Vending received machines that never functioned as advertised (3 out of 6 did not function at all), product received was either out of date or nearly so, or machine placement services.

## EPIC LEAF CORP.

63. Epic Leaf Corporation entered into a Sales Contract Agreement with Passive CBD Vending on or about January 19, 2021. A true and accurate copy of the Sales Agreement is attached hereto as Exhibit "O" and incorporated herein by reference.

64. The Sales Agreement provides that Epic Leaf would receive three vending machines for $50,000.00.

65. Epic Leaf contemporaneously entered into a Licensing Agreement with JSG Distribution at the same time it entered into the Sales Agreement with Passive CBD Vending. A true and accurate copy of the Licensing Agreement, dated January 19, 2021 is attached hereto as Exhibit "P" and incorporated herein by reference.

3861422

66. Epic Leaf never received machines, product, or machine placement services.

### GAVIN AND JENNIFER REES

67. Gavin and Jennifer Rees entered into a Sales Contract Agreement with Passive CBD Vending on or about July 1, 2021. A true and accurate copy of the Sales Agreement is attached hereto as Exhibit "**Q**" and incorporated herein by reference.

68. The Sales Agreement provides that the Rees would receive three vending machines for $45,000.00 and product of $15,000.

69. The Rees contemporaneously entered into a Licensing Agreement with JSG Distribution at the same time they entered into the Sales Agreement with Passive CBD Vending. A true and accurate copy of the Licensing Agreement, dated July 1, 2021 is attached hereto as Exhibit "**R**" and incorporated herein by reference.

70. The Rees never received machines, product, or machine placement services.

### PASSIVE CBD VENDING AND JSG DISTRIBUTION GO OUT OF BUSINESS

71. Unbeknownst to the Plaintiffs, Passive CBD Vending and JSG Distribution were already in discussions to go out of business at the time some of the Plaintiffs were communicating with the Defendants and at the time they signed the contracts.

72. For example, Defendants largely stopped responding to the Glancys' inquiries after they signed the contracts.

73. After several weeks, the Glancys had not heard from Defendants nor received the vending machine and product which they purchased. Therefore, the Glancys attempted to contact Defendants multiple times via e-mail and telephone to inquire as to the status of their products.

3861422

74. On or about April 26, 2022, the Plaintiffs received an e-mail from the Sasser Law Firm located in Cary, North Carolina. The e-mail contained an undated and unsigned letter from attorney Philip Sasser (the "Letter"). A true and accurate copy of the e-mail and the Letter is attached hereto and incorporated herein by reference as Exhibit "**S**."

75. The Letter states that "You are receiving this letter because you have purchased, but not yet received, a vending machine from Passive CBD Vending. This letter contains important information about your purchase. . ." and that "**Due to circumstances and factors beyond their control, Passive CBD Vending, LLC ("Passive CBD") and JSG Distribution, LLC have ceased operations.**" (emphasis in original).

76. Further, the Letter provides that "For over two years Passive and JSG have been battling challenges and delays caused by the pandemic and constantly changing restrictive government actions."

77. These "challenges" were never disclosed to the Plaintiffs.

78. Neither Passive CBD Vending, nor JSG Distribution, offered the Plaintiffs a full refund of the Purchase Price in the Letter. Instead, the Letter offers them two options: Option 1) claim the vending machine the Glancys originally purchased and agree to incur all shipping costs, the latter of which is contrary to the terms of the Sales Agreement, or Option 2) elect to receive a partial reimbursement of the Purchase Price.

79. Passive CBD filed bankruptcy in the United States Bankruptcy Court for the Eastern District of North Carolina and the Plaintiffs have filed Proofs of Claim.

3861422

## CAUSES OF ACTION

### COUNT I – DEMAND FOR ARBITRATION

80. The Plaintiffs incorporate paragraphs 1 - 78 as if fully set forth herein.

81. The Sales Contract Agreement and the Licensing Agreement provide that all the suits are to be resolved by arbitration.

82. Hylton and Jones, as agents of the Defendants, are bound by the arbitration provisions.

83. The Plaintiffs request that the Court compel the Defendants to arbitration.

WHEREFORE the Plaintiffs, by counsel, respectfully request that the Court compel arbitration in favor of the Plaintiffs and order the Defendants to attend arbitration in this matter and for all other just and proper relief.

### COUNT II – ALTER EGO AND VICARIOUS LIABILITY

84. The Plaintiffs incorporate Paragraphs 1 – 82 as if fully set forth herein.

85. Passive CBD is subject to a bankruptcy stay and is not named as a party to this litigation.

86. JSG Distribution is an alter ego of Passive CBD and should be liable to the same extent as Passive CBD.

87. JSG Distribution had the same or similar ownership and address as Passive CBD.

88. Upon information and belief, JSG Distribution and Passive CBD commingled funds and/or shared common employees or agents.

89. The obligations of Passive CBD should be considered to be obligations of JSG Distribution and the corporate form disregarded.

3861422

90. Passive CBD has breached its contract with each of the Plaintiffs and JSG Distribution is liable to the same extent.

WHEREFORE the Glancys, by counsel, respectfully request that the Court enter judgment in their favor and against Defendants in an amount to be determined at trial, for prejudgment and post-judgment interest, attorney's fees, costs, and for all other just and proper relief.

### COUNT III – FRAUD OR CONSTRUCTIVE FRAUD

91. The Plaintiffs incorporate paragraphs 1 - 89 as if fully set forth herein.

92. The relationship between Defendants and the Plaintiffs is that of buyer and seller. As such, Defendants owed the Plaintiffs a duty of good faith and fair dealing.

93. Defendants possessed superior knowledge as to their financial health and well-being at the time they contracted with the Plaintiffs.

94. The Defendants and their agents failed to disclose material issues with their financial health prior to contracting with the Plaintiffs and after the parties had entered into a contractual relationship.

95. The Defendants actively concealed this information from the Plaintiffs by continuing to claim that they were providing services.

96. The Defendants and their agent made statements to the Plaintiffs to induce the Plaintiffs to enter into the Sales Contract Agreement and the Licensing Agreement that the Defendants knew or should have known were false or misleading.

97. Passive CBD and JSG Distribution and its agents represented to the Plaintiffs that the machines were built in the United States when in actuality the machines were built in China.

3861422

98. Passive CBD and JSG Distribution agents were instructed to not inform customers that the machines were built in China and to tell the customers that the machines were built in the United States.

99. The Defendants, including Hylton and Jones, failed to disclose certain, material risks to the Plaintiffs including, but not limited to, that the financial results promised had never been achieved or that the Defendants did not have guaranteed locations for the vending machines.

100. The Defendants, including Hylton and Jones, failed to disclose the financial distress of Passive CBD and JSG Distribution to the Plaintiffs and continued to sell and market the machines and product a mere weeks before they announced the close of their business.

101. The Plaintiffs have suffered damages as a result of the Defendants' acxtions.

WHEREFORE the Plaintiffs, by counsel, respectfully request that the Court enter judgment in their favor and against Defendants in an amount to be determined at trial, for prejudgment and post-judgment interest, attorney's fees, costs, and for all other just and proper relief.

### COUNT IV – CIVIL AND CRIMINAL CONVERSUION

102. The Plaintiffs incorporate paragraphs 1 - 100 as if fully set forth herein.

103. Defendants knowing or intentionally exerted unauthorized control over the property of the Plaintiffs, namely the purchase price paid for the vending machines.

104. The purchase price paid for the vending machines and product should have been earmarked and segregated only for its designated use.

105. Upon information and belief, the Defendants used the money for reasons other than the purchase of the Plaintiffs' promised vending machines and product.

106. The Plaintiffs suffered damages as a result of the knowing, intentional, and unauthorized exercise of control over their property by Defendants.

107. The Plaintiffs are entitled to treble damages and attorney's fees pursuant to Indiana Code § 34-24-3-1.

WHEREFORE the Plaintiffs, by counsel, respectfully request that the Court enter judgment in their favor and against Defendants in an amount to be determined at trial, for prejudgment and post-judgment interest, attorney's fees, and for all other just and proper relief.

### COUNT V – DECEPTIVE CONSUMER SALES PRACTICES

108. The Plaintiffs incorporate paragraphs 1 - 105 as if fully set forth herein.

109. Indiana and North Carolina have enacted statutes to stop "deceptive consumer acts" and to prevent marketers from defrauding or misleading customers.

110. The statutes that applied are codified at Indiana Code § 24-5-0.5-3 and N.C.G.S. § 75-1.1.

111. The Defendants engaged in a concerted pattern of consumer deception and fraud by advertising in Indiana and the other states where Plaintiff's' reside and made representations regarding their products and services that they knew were false and misleading and by failing to disclose information material to the transaction.

112. As a result of the deceptive marketing and consumer fraud, the Plaintiffs were lured into parting with their hard-earned money in favor of the Defendants based upon promises that the Defendants knew or should have known they were not able to fulfill.

3861422

113. The Plaintiffs suffered damages of the deceptive marketing practices of the Defendants.

WHEREFORE the Plaintiffs, by counsel, respectfully request that the Court enter judgment in their favor and against Defendants in an amount to be determined at trial, for prejudgment and post-judgment interest, attorney's fees, and for all other just and proper relief.

Respectfully submitted,

BARRETT McNAGNY LLP

By: /s/ Michael H. Michmerhuizen
Michael H. Michmerhuizen, #22086-02
215 East Berry Street
P.O. Box 2263
Fort Wayne, IN 468012263
Phone: (260) 423-9551
Fax: (260) 423-8920
Email: mhm@barrettlaw.com

3861422